## Rehm-Zeiher Company v. F. G. Walker Company

(Decided November 20, 1913).

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Fourth Division).

1. Contracts—Mutuality of Obligation Necessary to Constitute a Binding Contract.—Unless a contract is binding on both parties it is not binding on either of them.

2. Contracts—Particular Contract Lacking in Mutuality, and Therefore Not Enforceable by Either Party.—Where A, a distiller, and B, a whiskey dealer, entered into a contract by which A agreed to furnish to B a specified quantity of whiskey each year for five years but the contract provided that "if for any unforeseen

reason the party of the second part, B, find that they cannot use the full amount of the above named goods, the party of the first part, A, agrees to release them from the contract for the amount desired by party of the second part," this contract did not obligate B to take any of the whiskey, and therefore he could not enforce specific performance of the contract.

3. Contracts—Mutuality.—When Circumstances of Transaction Make Contract Lacking in Mutuality Binding.—Where A and B enter into a contract by which A agrees to furnish to B, for example, all the coal that B will require in the operation of an established factory, the contract is not lacking in mutuality, as B may require A to furnish him all the coal he needs to operate his factory and A may insist that B shall take from him all the coal he needs for this purpose.

4. Contracts—Option Contracts—Validity of.—Although an option contract may be based on a nominal and insufficient consideration, if it is accepted during the life of the option, it will constitute an enforceable contract entitling the optionee to specific performance, but before its acceptance the optionor may withdraw it without incurring any liability.

5. Contracts—Option Contracts—Must Be Accepted in Terms of Contract.—An option, to be binding upon both parties, must be accepted during its life in the terms of the option. Neither of the parties can modify the conditions of the option to suit his own interest or convenience. He must either take it as it stands or let it alone.

6. Contracts—Option Contract—Validity of.—Where a contract provided that A should furnish to B a certain amount of whiskey each year for five years, but B was not obligated to take any of it, if B desired to impart validity to the option, he should have accepted it unconditionally before it was withdrawn by A, by taking each year the full amount of whiskey specified in the contract. B could not take a part only of the whiskey for the first two years and then insist that A deliver to him subsequently the full amount specified in the contract. A rule like this would give the optionee an unfair advantage by allowing him to accept so much of the contract as suited his interest, with the right to reject so much of it as he saw proper to reject.

7. Words—"Unforeseen Reason."—The words "unforeseen reason" in a contract, permitting one of the parties "for any unforeseen reason" to excuse himself from performance, left it with him to assign any reason he might see proper for declining to perform the contract. It was not necessary that the reason should be a good reason or a reasonable reason.

FRED FORCHT, JR., and HUMPHREY, MIDDLETON & HUMPHREY for appellant.

JOSEPH SELIGMAN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant, a corporation, in the years 1908, 1909, 1910, 1911 and 1912, and prior thereto, was engaged in the business of selling whiskey. That is to say, it purchased from distillers certain brands and quantities of whiskey and then sold the whiskey so bought to the trade. The appellee, during the years named, and prior thereto, owned and operated a distillery. In 1908 the parties entered into the following contract:

"This contract made and entered into this November 17, 1908, by and between the F. G. Walker Company, of Bardstown, Nelson County, Kentucky, a corporation, party of the first part, and the Rehm-Zeiher Company, of Louisville, Jefferson County, Kentucky, party of the second part.

"The party of the first part has this day sold to the party of the second part 2,000 cases of old Walker whiskey put up under a private brand, to be delivered during the year 1909, 3,000 cases to be delivered during the year 1910, 4,000 cases to be delivered during the year 1911, and 5,000 cases to be delivered during the year 1912, at the following prices; quarts bottled in bond, $6.70; pints bottled in bond, $7.20; half-pints bottled in bond $7.70.

"Should the party of the first part lose by fire the whiskey with which this bottling is to be done or the bottling room during the life of this contract, then they are to be held excusable for not filling same. If for any unforseen reason the party of the second part find that they cannot use the full amount of the above named goods, the party of the first part agrees to release them from the contract for the amount desired by party of the second part."

In 1912 the appellant brought this suit against the appellee to recover damages for its failure to furnish 2596 cases of the 4,000 cases of whiskey it was provided in the contract should be furnished in 1911. The petition averred that during the year 1911 the appellant demanded that the appellee furnish to it 4,000 cases of old Walker Whiskey, but that in violation of its contract the appellee only furnished 1,044 cases and refused to furnish the remainder, to its damage in the sum of $6,798, which sum it averred was the loss it sustained by the failure of the appellee to furnish the 2,596 cases it failed and refused to furnish.

After a demurrer had been overruled, an answer was filed, setting up various defenses, which were contro-

verted by a reply, and the parties went to trial before a jury. After the evidence for the appellant had been concluded, the lower court directed a verdict in favor of the appellee upon the ground that the contract was lacking in mutuality and, therefore, could not be made the subject of an action for its breach by either party. On this appeal the only question we need concern ourselves with is the one upon which the trial judge rested his opinion, that the appellant could not recover.

It appears without contradiction that in 1909 the appellant only ordered and received 786 cases of the 2,000 called for by the contract, and that in 1910 it only ordered and received 1,200 cases of the 3,000 cases called for by the contract, and that the appellee did not demand or request that it should take in either of these years the full number of cases specified in the contract or any greater number than it did take. It further appears that in the early part of 1911 whiskey advanced in price and the appellee refused to deliver to the appellant whiskey it ordered. After this, however, the appellee, upon request, furnished to the appellant 1,044 cases of the 1911 whiskey, but in September, 1911, it peremptorily refused to furnish any more, and thereupon this suit was brought.

O. E. Rehm, president of the appellant corporation, testified that his company had been in business since 1904, and that in 1908 he and R. H. Edelen, president of the F. G. Walker Co., had several conversations relating to the subject of the Walker Company furnishing to his firm certain quantities of whiskey, and that following these conversations Edelen, in November, 1908, prepared and presented to him the written contract heretofore quoted. He further testifies that when Edelen brought the contract to him "he said, 'Read this. I believe you could use this whiskey.' I said, 'That is too much whiskey for us. We are a young firm just building up our trade, and I don't believe we can use it.' After I told him it was too much whiskey, he said, 'You don't have to take it all if you can't use it. You are a growing firm. Your business will increase that much,' and I signed it."

He also testified that the whiskey was to be bottled under the name "Fernwood," a private brand owned by his concern. He further testified: "Q. Under what brand was the whiskey bottled by the F. G. Walker Co.? A. Fernwood. Q. Who notified them to that effect?

A. We did. Q. Who had the labels made? A. Mr. Edelen. Q. Who had the name F. G. Walker put in large lines on the front of the label? A. Mr. Edelen had the labels made. He paid for them. Q. Did you have anything to do with telling them how to make the label or where to put his name? A. I did not. * * * Q. You signed the contract with the understanding you didn't have to use the whiskey if you didn't need it, didn't you? A. The contract states that. Q. You could use as little or as much as you wanted, was that the understanding with which you signed this contract? A. That is what the contract states. Q. If you did not need any you did not have to take any? A. We used all the Walker whiskey; all of our Fernwood was to be bottled at his distillery. Q. If you did not sell any you did not need to take any whiskey? A. We were going to sell it. Q. You expected to try to sell it? A. Yes, sir. Q. Did you understand you were obligated to take 2,000 cases during 1909? A. That is, if we could not sell that we were not obligated. Q. Did you understand that during 1910 you were to take 3,000 cases? A. Yes, sir. Q. That you had to take that many? A. No, sir. Q. Did you understand that if you did not need it you would not have to take it? A. Yes; for any unforseen reason. Q. What were some of the unforseen reasons spoken of, if any? A. Wasn't any. Q. Your understanding was you were only to take as much as needed? A. Yes, sir. Q. He had to give it to you, but you did not have to take it from him? A. I don't know about that, if for any unforseen reason we could not use it. Q. What was the character of the unforseen reason you understood might happen? A. I don't know that I understood anything at the time. Q. Well now during the year 1909, how much of this whiskey did you buy? A. The figures there will show. Q. Is that all you ordered that year? A. Yes, sir. Q. That is all you wanted to buy that year? A. Yes, sir. Q. That is all you would have to buy that year? A. All we sold. Q. What reason prevented you from taking the other 1,214 cases that year? A. Did not sell them. Q. Was that because you did not want them? A. Did not sell them. Q. That was the unforseen reason that was referred to in this contract? A. Yes, sir.''

This witness was asked and answered a great many other questions relating to the matter in controversy, but the foregoing sufficiently illustrate the question at

issue in this case. It will be observed that the contract specifies that the whiskey was to be "put up under a private brand," but does not mention the name of the brand. It appears, however, from the evidence of Rehm that his firm ordered this whiskey to be bottled by the F. G. Walker Co. under the name "Fernwood," and that under this brand or name all of the whiskey furnished by the F. G. Walker Co. in 1909, 1910 and 1911 was sold. It is further shown by his evidence that his firm was only obliged, under the contract, to take each year such number of cases of whiskey as it could sell to the trade under the brand "Fernwood," and that during the years 1909 and 1910 it only requested the delivery of the number of cases furnished in those years. It is further made plain by his evidence that his firm was only obliged by the contract to take each year as many cases as it wanted. In short, if it did not find it profitable in its business to handle any of the whiskey provided for in the contract, it was not obligated to take any of it. It was entirely optional with it whether it took any of the whiskey or not. This, according to the evidence of Rehm, is what the words "unforseen reason" in the contract meant.

We have referred at this length to the evidence of Rehm for the purpose of showing that according to his understanding of the contract it did not obligate his firm to take any of the whiskey provided for in the contract. Under his construction of the contract it was clearly lacking in mutuality. It may be well, however, to say at this point that we do not put our decision, that this contract was so lacking in mutuality as not to be enforceable, upon the construction placed upon it by Rehm. We think the terms of the contract itself show that it is what is called a unilateral contract. In other words, a contract binding only one of the parties to do anything. Although it is apparently conceded that the contract on its face is unilateral, the effort is made to take it out of the rule of non-enforceability by either party upon the ground that the conduct of the parties in executing the contract shows that it was contemplated by the contract as understood and acted upon by the parties that the Rehm-Zeiher Company was obliged to take all of the whiskey that it could sell under the "Fernwood" brand, and this being so, Walker & Co. were obliged to furnish all that could be sold under this brand. Or, to state it differently, the argument is that the contract, indefinite and wanting in mutuality on its face, was made certain and definite by the conduct of the

.parties, and, therefore, Walker & Co. could have com-
.pelled the Rehm-Zeiher Co. to take all of the whiskey
they could sell under the ''Fernwood'' brand, and the
Rehm-Zeiher Co. could compel Walker & Co. to furnish
all the whiskey they might be able to sell under this
brand.

There is a line of cases holding that where, for ex-
ample, A.and B enter into a contract by which A agrees
to furnish to B all the coal that B will require in the
operation of an established factory, that the contract is
not lacking in mutuality, as B may require A to furnish
him all the coal he needs to operate his factory, and A
.may insist that B shall take from him all the coal he
needs for this purpose.

An illustration of this class of cases is Crane v.
Crane, 105 Fed., 869, where the court said: ''It is with-
in legal competency for one to bind himself to furnish
another with such supplies as may be needed during
some certain period for some certain business or manu-
facture; or with such commodities as the purchaser has
already bound himself to furnish another. Reasonable
provision in business requires that such contracts,
.though more or less indefinite, should be upheld. Thus
a foundry may purchase all the coal needed for the sea-
son; or a furnace company its requirements in the way
of iron; or a hotel its necessary supply of ice. So, too,
a dealer in coal in any given locality may contract for
such coal as he may need to fulfill his existing contracts,
regardless of whether delivery by him to his customers
is to be immediate or in the future. In all these cases,
contracts looking towards the future, and embodying
subect-matter necessarily indefinite in quantity, have
been upheld; but it will be observed.that, although the
quantity under contract is not measured by any certain
standard, it is capable of an approximately accurate
forecast. The capacity of the furnace, the needs of the
railroad, or the requirements of the hotel are, within cer-
tain limits, ascertainable by the vendor.''

Cold Blast Transportation Co. v. Kansas City Bolt &
Nut Co., 114 Fed., 77, 57 L. R. A., 696; Manhattan Oil
Co. v. Richardson Lubricating Co., 113 Fed., 923; Minn.
Lumber Co. v. White Breast Coal Co., 160 Ill., 85, 31 L.
R. A., 529; Kliptein & Co. v. Allen, 123 Fed., 992; Wells
v. Alexandre, 130 N. Y.; 642, 15 L. R. A., 218; Hoffman
v. Maffioli, 104 Wis., 630, 47 L. R. A., 427, and Lima Loco-
motive & Machine Co. v. National Steel Castings Co., 155
Fed., 77, 11 L. R. A. (n. s.), 713; Hickey v. O'Brien, 123

Mich., 611, 49 L. R. A., 594, furnish other illustrations of this rule, which is of general application in determining the validity of contracts assailed for lack of mutuality.

The facts of this case, however, do not bring it within the scope of the principle announced in these cases. The contract does not specify the brand or name under which the whiskey was to be sold, nor does it appear from the evidence that the Rehm-Zeiher Co. had established any ascertainable volume of trade in the sale of Fernwood brand that would fix with any reasonable degree of certainty the quantity of whiskey necessary to supply the demand for this brand.

If the Rehm-Zeiher Company had an established trade for the sale of the Fernwood brand and the contract had provided that the whiskey was to be put up under this brand, there would be much force in the argument that the Rehm-Zeiher Company could be compelled by the Walker Company to take so much of this whiskey as might be necessary to supply the demand established by the Rehm-Zeiher Company for this Fernwood brand, and the case would fall within the rule laid down in the cases we have cited. But there is no condition of this kind in the contract. In fact the contract fully sustains the construction placed on it by Rehm, that his company was not required by the contract, unless it suited its interest to do so, to take any of the whiskey.

If the contract had specified that the Rehm-Zeiher Company was only obliged to take so much of the whiskey as it "desired to take," or as it "pleased to take," it would not any more certainly have given the company the right to exercise its pleasure as to how much whiskey it would take than do the words "unforseen reason." The unforseen reason that would excuse the company from only taking so much of the whiskey as it desired to take, if any, left the amount it should take entirely to its discretion. The contract places no limitation whatever upon the meaning of the words "unforeseen reason." So that any reason that the company might assign for not taking the whiskey would relieve it of any obligation to do so. It was not necessary that the reason should be a good reason or a reasonable reason.

If the Walker Company had sought by a suit to compel the Rehm-Zeiher Company to take in any of the years the amount of whiskey specified in the contract, or any part of it, it is clear that the Rehm-Zeiher Company could have defeated this suit by pleading that some un-

foreseen reason had arisen that justified them in not taking any of the whiskey, and, therefore, they were not obliged to do so. If, as we think, the contract was non-enforceable by the Walker Company either in whole or in part, it was certainly lacking in such mutuality of obligation as rendered it non-enforceable by the Rehm-Zeiher Company.

Looking at the contract in this light, the case seems to be controlled by the opinion of this court in Steinwender-Stoffregen Coffee Co. v. Guenther Grocery Co., 26 Ky. L. R., 270. In that case the Coffee Company and the Grocery Company entered into a written contract by which the Grocery Company agreed to handle the coffee of the Coffee Company in a described territory, and the Coffee Company agreed to continue a salesman in that territory so long as it was to their mutual interest that special work should be done in order to keep the business alive. It was further agreed that the Grocery Company should co-operate with the salesman of the Coffee Company. In holding that the Coffee Company was not liable to the Grocery Company for the failure to deliver it a certain brand of coffee, the court said:

"Contracts which are valid must be mutual and binding upon both parties. We have examined this paper with care, and have been unable to find anything binding upon the appellee. It was not compelled to perform any stipulation, and by the writing, the appellee could at any time have given up, without hurt or injury to itself, the sale of these coffees, and it was not compelled to make the first or any subsequent orders for coffee. Nor was the appellant compelled to furnish any specified amount of coffee, nor was there any specified length of time during which it offered or proposed to furnish appellee coffee. As we have said, it is a fundamental principle of law that there must be mutuality in every contract. If one of the parties is not bound, then the other is not."

Another argument advanced by counsel for the Rehm-Zeiher Company is that this contract was a continuing option by the Walker Company to sell to the Rehm-Zeiher Company the quantity of whiskey specified in the contract, and that the Rehm-Zeiher Company had the right to exercise the privilege given to it by the contract and take so much of the whiskey as it needed; and having exercised in the years 1909, 1910 and 1911 its privilege to take a certain part of the whiskey, this circumstance created an obligation on the part of the Walker Company to furnish it when demanded all of the whiskey

mentioned in the contract. In support of this theory attention is called to the cases of Bank of Louisville v. Baumeister, 87 Ky., 6; Bacon v. Kentucky Central Railway Co., 85 Ky., 373; Murphy, Thompson & Co. v. Reed, 125 Ky., 585. In the Baumeister case a parcel of land was leased under a contract containing the stipulation that the lessee might purchase the leased premises within a specified time at an agreed price, and the court held that this was an enforceable contract, saying:

"It is true, as argued, 'a contract must be mutual, and one party cannot be bound without the other.' But that does not mean that any one or more acts to be done by one of the parties must necessarily be simultaneous with the consideration paid or agreed to be paid by the other. * * * We perceive no reason why the owner of unproductive real estate may not, as a part of a contract of lease, and in consideration of rent to be paid by his lessee, or expense to be incurred in making it productive, as seems to be this case, bind himself to sell it within a prescribed period at a stipulated price, at the option of the lessee."

In the Bacon case substantially the same question was involved as in the Baumeister case and the same conclusion reached.

In the Reed case the court held that an option to sell land, although for a nominal and insufficient consideration, if accepted by the optionee during the life of the option constituted an enforceable contract entitling the optionee to specific performance, but said: "The options could have been withdrawn before acceptance, without liability to the givers of the options. But, as they were not withdrawn, they constituted, instead of binding options, voluntary offers to sell, which, like any other valid offer, were, when accepted, binding upon the person making them."

In other words, the holding of the court was that where an option was not based on a sufficient consideration the optionor had the absolute right to withdraw the same at any time before it was accepted by the optionee. Under the principle announced in that case, although the contract we are considering was not binding upon either party because not binding upon the Rehm-Zeiher Company, the Rehm-Zeiher Company had the right in 1909, as the option had not then been withdrawn by the Walker Company to unqualifiedly accept the terms and conditions of the contract, and if they had done this, their unqualified acceptance would of course have con-

stituted an enforceable and binding contract upon both of the parties. But this they did not do.

Treating this as an option contract under which the optionor was to furnish each year for five years a certain amount of whiskey that the optionee might take or not take as he pleased, it would be manifestly unfair to say that the optionee might elect to take the quantity of whiskey specified in the contract for one year or two years, but decline to take the quantity specified for the other years. This would be giving to the optionee an unfair advantage by allowing him to accept so much of the contract as suited his interest, with the right to reject so much of it as he saw proper to reject.

To treat this as an option contract does not help the case for the Rehm-Zeiher Company; for where there is a contract like this extending over a period of years, certain parts of it to be performed each year, the optionee, in order to impart validity to the contract, if it is nonenforceable in the beginning, must offer, before it is withdrawn, to accept it as a whole according to its terms and conditions. He cannot accept a part and reject a part. For example, if in the Reed case the optionee, during the life of the option, had said to the optionor: "I will take on the terms specified in the option a part of the land therein described, but I will not take all of it," it could not be successfully maintained that this partial acceptance obliged the optionor to convey the quantity of land the optionee desired to take. An option to be binding upon both parties must be accepted, during its life, in the terms of the option. Neither of the parties can modify the conditions of the option to suit his own interest or convenience. He must either take it as it stands or let it alone.

This being our view of the contract, looking at it as an option contract, the Rehm-Zeiher Company lost its right to require compliance with the option by failing to unconditionally accept it in 1909 and 1910 by ordering for each of these years the full amount of whiskey mentioned in the contract.

Some importance seems to be attached to the circumstances that the Walker Company furnished in 1909, 1910 and 1911 a part of the whiskey mentioned in the contract, for which the Rehm-Zeiher Company paid the prices agreed upon. We do not think, however, that this circumstance is entitled to any controlling weight in determining the rights of the parties in the present litigation. The Walker Company were not obliged to furnish

any whiskey in the years named, nor was the Rehm-Zeiher Company obliged to take any; and the mere fact that the Walker Company voluntarily chose to furnish some of the whiskey did not deny to it the privilege of refusing at its election to furnish the remainder of the whiskey. In other words, its conduct in furnishing part of the whiskey did not affect in any manner the rights of the parties to the contract or amount to an election on the part of the Rehm-Zeiher Company to accept unconditionally the terms of the contract. In short, the obstacle in the way of the Rehm-Zeiher Company in this case is that they are seeking to enforce a contract that was never at any time binding upon them. Their acceptance of a part of the whiskey provided for in the contract in the years 1909 and 1910 did not oblige them to take any of it in the subsequent years.

The case of Louisville & Nashville R. R. Co. v. Coyle, 123 Ky., 854, is also relied on as an authority for the enforceability of this contract. In that case Coyle proposed to Jones, agent for the railroad company, to purchase a specified number of ties. Jones accepted the proposition, but not according to its terms. However, Coyle undertook to furnish the ties, and after he had furnished a large number of them, the railroad company notified him that they would not accept any others. Thereupon Coyle, professing his ability to furnish the number of ties specified in his proposition, brought suit against the railroad company to recover damages for a breach of the contract. The defense was that there was no mutuality in the contract and, therefore, it was not binding upon either of the parties and could be broken by either at any time. This argument was rested on the ground that the letter written by Jones was not an acceptance of the terms of the offer made by Coyle and, therefore, the letters did not constitute a binding contract upon either party.

In disposing of the case, the court held that while it was true that the letters did not constitute a binding contract, as the proposition of Coyle had not been accepted according to its terms, the initial indefiniteness of the contract was made certain by the conduct of the parties in construing it and acting under it, saying that "where the performance of a contract not required to be in writing is not compulsory on one party, and he has an election to perform or not as he chooses, and he elects to perform his part of the contract, and the other party accepts his election, the want of mutuality is thereby

eliminated and he may then have a specific performance in proper cases against the adverse party, although no cause of action would originally lie for a breach of performance.''

The principle announced in that case is not at all applicable to the contract involved in this case. In the Coyle case the only obstacle to the validity of the contract consisted in the fact that the minds of the parties had never met, and this obstacle was removed, so the court said, by the conduct of the parties in tendering and accepting performance. The difficulty with the contract in the case we are considering does not grow out of the fact that there was no meeting of the minds of the parties but out of the fact that the contract was never at any time binding on one of them.

Upon the whole case our conclusion is that the judgment of the lower court was correct, and it is affirmed.