Argued March 16, cross-bill dismissed April 6, rehearing denied April 27, 1915.

# BROWN v. FARMERS & MERCHANTS' NAT. BANK.

### (147 Pac. 537.)

**Execution—Notice of Sale—Sufficiency and Effect.**

1. An advertisement of a sheriff's sale on execution reciting judgment in favor of a creditor against certain debtors, the levy upon all their right, title and interest in the real property described by legal subdivisions, divested the debtors of any title to the property; the use of the name, "Hattie Brown" instead of "Kittie Brown" not vitiating a prior sufficient description, and this independently of Section 241, L. O. L., subdivision 4, which expressly makes a confirmation of sale a conclusive determination of the regularity of the proceedings for sale.

**Frauds, Statute of—Sufficiency of Evidence—Agreement and Memorandum of Sale.**

2. Evidence in behalf of cross-complainant in ejectment claiming under a contract for a conveyance by defendant bank, plaintiff's grantor, *held* insufficient to prove any written agreement or memorandum to convey the realty, as required by Section 808, L. O. L., subdivision 6.

**Specific Performance—Contracts Enforceable—Mutuality.**

3. Where there was no such mutuality in the contract to convey as would have entitled the vendor bank to have compelled the cross-complainant as purchaser to pay the purchase price of the land, the alleged contract could not be specifically enforced against the bank.

> [As to mutuality of contract, see notes in 7 Am. Dec. 492; 140 Am. St. Rep. 59. As to necessity for and what is mutuality of remedy, see note in 27 Am. St. Rep. 173.]

**Vendor and Purchaser—Offer and Acceptance—Withdrawal.**

4. An offer to convey realty until accepted is subject to withdrawal without prejudice to the party making it, and where the alleged purchaser knew nothing of the offer, there was no prejudice in its withdrawal, and the vendor was not under obligation to renew the offer.

> [As to acceptance of option to purchase land, see note in 118 Am. St. Rep. 597.]

From Douglas: JAMES W. HAMILTON, Judge.

Department 1.   Statement by MR. JUSTICE BURNETT.

This suit had its inception in a cross-complaint in equity as a defense against an action in ejectment

brought against Kittie Brown and others by E. V. Weaver, who is a defendant herein. The bill alleges, in substance, that from the death of her father, Henry Wiley, until September 16, 1912, the plaintiff occupied certain lands in Douglas County as the owner thereof by virtue of a devise of the same in his last will and testament; that since that date she has been in the exclusive possession of the premises as vendee under an agreement with the defendant to sell and convey them to her. She traces the history of the title of the defendant bank in the realty in question from the giving of what she alleges was an accommodation note executed and delivered by her and her husband with one Blankenship to the bank October 18, 1905, for $770, through a judgment on that note against herself and her husband rendered by the Circuit Court of Douglas County on May 16, 1908, upon which execution was issued, the land sold, the sale confirmed June 27, 1911, and a sheriff's deed issued to the bank September 16, 1912. Concerning the notice of the sheriff's sale, she says, in substance, that the lands were advertised "under the name of Hattie Brown," which point will be hereafter noticed. She states that on February 5, 1913, while she was still on the lands under the contract she mentions, the bank attempted to get possession of the premises by virtue of a writ of assistance, which was afterward recalled by the Circuit Court. The following allegations then appear in the complaint:

"Plaintiff further alleges that she was led to believe by the defendant bank, and by its attorney and agent, O. P. Coshow, that they would redeem said lands first above described to her at any time after said sheriff's deed was made and delivered as aforesaid, upon the payment to the said defendant bank of their demands against her on account of said accommodation note which plaintiff signed as aforesaid, without regard to

the time allowed by law in which to redeem lands from execution sale, and relying upon their said promises in that behalf, the plaintiff let the statutory time for redemption expire without having redeemed said lands from said execution sale; that on the 25th day of October, 1912, and after the statutory time for redemption of said lands had expired, the plaintiff, in accord with the prior promises of the said defendant bank, offered to pay the said defendant bank in full all its demands against the plaintiff by reason of said accommodation note as aforesaid, in consideration for their deed reconveying to plaintiff said first above-described lands, and on the 6th day of November, 1912, while the said defendant bank was seised and possessed of said lands as above set forth, the said bank entered into a contract agreement to and with plaintiff, wherein and whereby it accepted the plaintiff's offer to pay all their demands as above stated, and in that behalf agreed to accept in full therefor the sum of $1,348.66, with interest at 8 per cent per annum from said 6th day of November, 1912, until paid, and in consideration therefor the said defendant bank would make, execute and deliver their deed for said lands first above described to whomever the plaintiff designated, and in that behalf and with that purpose in view the said defendant bank did, on or about the 25th day of November, 1912, make and execute their deed to said lands, and on the 30th day of November, 1912, deliver the same in escrow with the Douglas National Bank, of Roseburg, Oregon, with directions to said bank to deliver the same to the plaintiff or her agent, as per the terms of their said agreement above mentioned, upon the payment to said bank of the sum of $1,348.66, with interest thereon from November 6, 1912; that the plaintiff took and held possession of said first above-described lands under and pursuant to said contract agreement of purchase and sale aforesaid, and has ever since been, and is now, in the exclusive possession thereof, and has made improvements thereon, and by virtue of said agreement has farm let the same to the said J. A. Coplen, the defendant mentioned in the ejectment action against

which this suit is filed, for a term of three years from last fall, the year 1912."

She alleges that she duly performed "all the conditions of said contract agreement of sale and purchase" upon her part to be kept and performed, and at divers times tendered to the defendant bank through its attorney the full amount of all its demands against the plaintiff by reason of said accommodation note, and demanded a deed, without receiving the same. She avers other tenders on May 6, 1913. Her prayer is to the effect that a deed made by the defendant bank to the defendant Weaver, whom she alleges took with knowledge of her rights, be canceled or that he be held to be her trustee of the land; that he execute to her a deed on payment of the amount that would be due the bank on its note and judgment up to the time of the tender to Weaver; and that the defendants be adjudged to account to her for damages in the sum of $8,500. The defendants answering separately admit the plaintiff's original title in the land, the execution by her and her husband of the note in question, the commencement of the action against her, the rendition of the judgment mentioned, the execution, sale, confirmation and succeeding deed, the issuance of the writ of assistance and its recall; but deny every other allegation of the complaint. The Circuit Court, after a hearing, entered a decree to the effect that out of money tendered into its registry by the plaintiff there be paid to the defendant bank the sum of $1,535.34, and that within 20 days from such payment the defendants execute and deliver to the plaintiff a deed reconveying to her the land in question, in default of which the decree should stand for a deed. The defendants have appealed.

CROSS-BILL DISMISSED. REHEARING DENIED.

For appellants there was a brief with oral arguments by *Mr. Oliver P. Coshow* and *Mr. A. N. Orcutt.*

For respondent there was a brief over the names of *Mr. Benjamin F. Jones* and *Mr. Commodore S. Jackson,* with an oral argument by *Mr. Jones.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The admitted history of the case reveals the execution of the note to the bank, action thereon against the plaintiff and her husband in the Circuit Court of Douglas County, personal service of summons upon them, judgment for want of an answer, execution upon the judgment, sale in pursuance thereof, confirmation of sale, and, after the expiration of a year, there being no redemption, a sheriff's deed conveying the land to the defendant bank.

1. The plaintiff's criticism of the notice of sheriff's sale is not well founded. The advertisement recites the judgment in favor of the bank against Kittie Brown and C. W. Brown, defendants, and the levy upon "all the right, title and interest that the said Kittie Brown and C. W. Brown, defendants aforesaid, or either of them, had on the 16th day of May, 1908, or have had at any time since, or now have," in the real property in dispute which is described in the notice by legal subdivisions. The announcement then goes on with this language:

"Said land being the identical tract devised and granted to the said Hattie Brown by the last will and testament of Henry Wiley, deceased."

The reference to the judgment and the recital of the levy, together with the description by legal subdivisions of the land, all as the property of Kittie Brown

and C. W. Brown, is enough in that respect to carry the title of the plaintiff here in the property, and the use of the name "Hattie Brown" does not vitiate the previous sufficient description. . Indeed, in the trial of the case at bar and in the argument no reliance was made upon that point. Besides all this, in the language of our Code, the confirmation of sale was a "conclusive determination of the regularity of the proceedings concerning such sale, as to all persons, in any other action, suit, or proceeding whatever": Section 241, subd. 4, L. O. L.

As before stated, the sale of the plaintiff's property culminated in a sheriff's deed September 16, 1912. That instrument operated as a matter of law to utterly divest her of her title to the realty in question. To establish any further or subsequent hold on the premises, she must allege and prove a valid contract with the then holder of the title to convey the same to her which she is entitled to have specifically performed. Without discussing the sufficiency of her narration about such a contract, but giving it its full value in her favor, she must, in order to recover in this proceeding, prove an agreement complying with the statute on such subjects together with performance or a valid offer to perform while such a contract was in force. Section 808, L. O. L., thus fixes the standard of evidence applicable:

"In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law: * * (6) An agreement for the leasing, for a

longer period than one year, or for the sale of real property, or of any interest therein. * * ".

In one portion of her complaint she alleges that from September 16, 1912, the date of the sheriff's deed, she had been in possession of the lands under an agreement between her and the bank to sell the same to her; and in another portion she says, as quoted above, that the agreement was entered into November 6, 1912.

The business was conducted mainly by means of correspondence. On October 25, 1912, one C. I. Leavengood wrote to the defendant bank the following letter:

"Myrtle Creek, Oregon, October 25, 1912.

"Farmers & Merchants' Natl. Bank, El Dorado, Kansas—

"Dear Sirs: As attorney for Kittie Brown, from whom you secured a judgment some years ago, and on whose property you hold a sheriff's deed, I wish to know if you will accept the full amount of judgment, with costs and interests in cash, and release the property. I asked Mr. Coshow, your attorney, to make this inquiry, but he is so busy in politics that it may have escaped his notice or attention. This judgment was taken in default without the parties having been advised as to exemptions and both Mr. and Mrs. Brown were sick and in bed at the time when the action was brought. While it would appear from the will filed recently that Mrs. Brown has only a life estate in the land, yet if we can discharge the debt as above stated, I believe we can raise the money on 10 days' notice. An early reply will greatly oblige,

"C. I. Leavengood."

The answer of the bank here follows:

"El Dorado, Kansas, Nov. 6, 1912.

"Mr. C. I. Leavengood, Myrtle Creek, Oregon:

"Yours of the 25th of Oct. at hand in regard to Kitty Brown property in which you offer to pay us what is due for redemption, and the directors have authorized

me to say to you that the consideration in deed is $1,110,23; our attorney's fees and cost paid $123.31, $1,233.54. Interest from Sept. 6, 1911, $115.12; total to Nov. 6, 1911, $1,348.66. Now, if you will pay us $1,348.66 and interest from this day at 8 per cent until paid we will make the deed to whoever Kitty Brown wishes. She seems anxious to get out of paying us, but still we ask nothing but the debt.

> "Yours truly,
> "WM. I. SHRIVER,
> "Cashier."

The reply of Leavengood is here quoted:

> "Myrtle Creek, Ore., Nov. 12, 1912.

"Wm. I. Shriver, Cashier, El Dorado, Kansas—

"Dear Sir: Please execute deed to C. I. Leavengood and send to Douglas National Bank, Roseburg, Oregon, with whom I have arranged to send you check for $1,348.66 and interest from Nov. 6, 1912, at 8 per cent. It was necessary for me to give personal security to obtain the amount and as I will be obliged to sell a part of the farm in order to reimburse the bank the title is my only security. Should you doubt my authority make an order from Kitty Brown a condition precedent to its delivery from Douglas National Bank to me.                    Yours truly,

> "C. I. LEAVENGOOD."

On November 25, 1912, the defendant bank wrote to the Douglas National Bank of Roseburg, inclosing a deed to Leavengood with instructions to deliver it to him on payment of $1,490.66, stating that he had offered to pay their claim and expenses which they had concluded to accept, but had made a mistake in computing the amount, and consequently demanded the greater sum. They close their letter with this language:

"We have added that amount to our estimate of claim in the deed and must have the full amount. We feel that Mrs. Brown did everything she could to avoid

paying us and when we find we have a property more valuable than our claim, she should be proud to make us whole.   If this price is not satisfactory with them, please return us the deed.''

Leavengood then wrote the defendant bank the following letter:

"Myrtle Creek, Oregon, Dec. 16, 1912.
"Farmers & Merchants' National Bank, El Dorado, Kansas—

"Dear Sir: Doubtless you are wondering why the money is not forthcoming in the matter of deed sent in escrow to Douglas National Bank at Roseburg. Well it is about the same old story of crooked intent on the part of Kittie Brown.   I have been her attorney in probation for her father's will, and after she received notice from Mr. Coshow, as your attorney, to vacate on ranch, she realized she was in trouble and for a stipulated fee offered by her I undertook to secure back the place and to sell off sufficient to pay off your claim and my fee.   After she learned I had succeeded in both—or have a buyer for the hill portion on west of road who offers sufficient to pay all indebtedness, she disclaims her offer, which was made in presence of the county judge and others.   I have asked Mr. Coshow to write to you asking that her consent to delivery of deed be not required, but he seems either to be unwilling or too busy to write.   Her idea is to evade paying any debt and in this as well as in your own case has shown her dishonesty.   My action in the matter was solely as an attorney and for a stipulated fee, and as to my integrity and honesty we refer to any business firm or bank at Roseburg or the Citizens' State Bank at this place.   Trusting that no other arrangements will be made nor the deed recalled until you have investigated, as my money is ready at bank.
"Yours truly,
"C. I. Leavengood.''

On receipt of this communication from Leavengood the defendant bank addressed the following letter to the Douglas National Bank:

"El Dorado, Kansas, December 24, 1912.
"Douglas National Bank, Roseburg, Oregon—
    "Dear Sir: Please return a deed sent you by us to
C. I. Leavengood about Nov. 6, 1912, as we are in-
formed they cannot comply. Return at once and
oblige.                              Wm. I. Shriver,
                                        "Cashier."

In pursuance of this letter the deed was returned as
requested. Other negotiations were had, but no agree-
ment was reached on the subject, and finally on March
31, 1913, the bank conveyed the property to the de-
fendant Weaver, who instituted the ejectment action
already mentioned.

The plaintiff herself says that the first negotiation
had with the bank was the letter written by Leaven-
good October 25, 1912, a date more than a month after
the execution and delivery of the sheriff's deed. Part
of her cross-examination is here set down:

"Q. Did you ever tender the money to the bank
while the deed was here to take up the deed?

"A. I did not have any money to tender while the
deed was here. I think the deed had gone back before
then.

"Q. Now, in order to be clear on this matter, Mrs.
Brown, as I understand you that personally or up
to the time you went to Kansas in March, 1913, you
had no personal correspondence or arrangement be-
tween yourself or the Kansas bank as to the repurchas-
ing of this property, is that true?

"A. No, sir.

"Q. That is true, is it?

"A. I do not understand what you mean.

"Q. (Question read to witness.)

"A. No, sir; I did not.

"Q. And all the negotiations were carried on be-
tween Mr. Leavengood and the bank, is that correct?

"A. Until I went to Kansas?

"Q. Yes, up to the time you went back there in March.

"A. Yes, that is all there was just between Leavengood and the bank.

"Q. So that whatever contract or agreement you had with the bank up to that time is included in the letter that passed between Mr. Leavengood and the bank? Is that right?

"A. That is all there was done, just what was done between Mr. Leavengood and the bank.

"Q. You say that pursuant to those arrangements that you went into possession of this land under your agreement with the bank?

"A. Yes, sir.

"Q. It is not a fact, then, that you went into possession under your agreement with the bank to repurchase at the date that the sheriff's deed was made to the bank?

"A. I cannot tell you anything about those dates.

"Q. That was September 12, 1912. Now these arrangements were all after that time, were they not, Mrs. Brown?

"A. I cannot remember the dates. There is too many dates for me to remember. .

"Q. Had the bank made you any promises before that Leavengood correspondence in regard to what they would do?

"A. No.

"Q. In regard to this land?

"A. No. * *

"Q. Your only relations with the bank was through Mr. Leavengood and what you did personally while you were in Kansas?

"A. Yes, sir.

"Q. Why didn't you redeem from the sheriff's sale before the year for redemption had expired?

"A. I couldn't get the money."

The plaintiff testified that she had an interview with the bank in El Dorado, Kansas, on March 29, 1913, On that point her evidence here follows:

"Q. Now, referring a moment to this trip which you say you made to Kansas, I think you testified that the bank there sent you back to Mr. Coshow to fix up some papers?

"A. They said to come out here and settle with Mr. Coshow.

"Q. Did you do it?

"A. I came out here and they were putting us out of the house.

"Q. Did you go back and see Mr. Coshow at all?

"A. I do not think that I came back to Mr. Coshow's office.

"Q. Did they put you out of the house?

"A. No, sir.

"Q. Did you go back to Mr. Coshow?

"A. No, sir.

"Q. You never have since then?

"A. No, sir; I didn't suppose it was necessary."

Further, on the subject of the deed sent by the defendant to the Douglas National Bank, her testimony is:

"Q. State when you first knew that the deed that had been deposited in escrow in the Douglas National Bank had been returned.

"A. Mr. Coshow told me that it had gone back that night that I went there to see him. That is the first I knew of it.

"Q. That is when you came down in answer to the summons in regards to the writ of assistance?

"A. Yes, in regard to the writ of assistance."

2. The utmost that can be claimed by the correspondence between Leavengood and the bank upon which plaintiff relies to prove her allegation of the contract to sell her the land is that there was an offer of the bank to convey the property to Leavengood with the consent of plaintiff. She herself says she knew nothing of the deed tendered to Leavengood until after it had been returned. The offer had then

been withdrawn, and it is inconceivable that she could have been a contracting party to something of which she was in total ignorance.  In short, there is no situation disclosed by the testimony in which the bank could have tendered to the plaintiff a deed for the property at any time and have successfully compelled her to pay the purchase price.

3, 4. The first tender which she made, as disclosed by the testimony, was in writing of date May 6, 1913, which was long after the bank had recalled the deed it had tendered to Leavengood and had conveyed the property to Weaver, on March 31, 1913.  The offer of the bank having been withdrawn, as already noted, it was at an end.  It is hornbook law that until an offer has been accepted it is open to withdrawal without prejudice to the party making it.  The plaintiff herself says she knew nothing of the offer; hence she could not have accepted.  Having withdrawn it under these circumstances, the bank was under no obligation whatever to renew it.  It is in evidence that some time in March, 1913, through its attorney, the bank endeavored to get the plaintiff and her husband to attorn to it and acknowledge its title; but they refused to do so. It cannot be that she could be contracting with the bank for the purchase of the property and at the same time deny its title.  The testimony utterly fails to establish any contract the specific performance of which could be enforced against the bank, for the very good reason that the bank could not at any time have compelled the plaintiff to pay the purchase price of the land.  There must be mutuality in any contract to make it enforceable.  It may be that in the beginning the plaintiff received nothing of the proceeds of the accommodation note which she signed, but the bank was not to blame for that.  The transaction has been long

drawn out and the burden of interest and expenses has largely increased. The plaintiff has shown no effort to liquidate the claim until after her title in the property had been utterly extinguished by sheriff's deed. She recounts efforts after that to obtain a purchaser for the land who would take up the defendants' claim, but admits they were all unsuccessful; and the first actual offer to pay anything to the bank was made after it had sold the property.

While the circumstances viewed from the plaintiff's standpoint suggest the exercise of magnanimity in her favor beyond the confines of law and equity, the record presents no feature which the court can consider as a basis for nullifying the title of the defendants to the land. The cross-bill must be dismissed.

CROSS-BILL DISMISSED. REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE McBRIDE and MR. JUSTICE BENSON concur.