## Walton's Executor v. Franks, et al.

(Decided March 18, 1921.)

### Appeal from Boone Circuit Court.

1. Specific Performance—Contracts Enforcible—Options—Revocation.—An agreement to sell and convey land for a stated price if founded upon a proper consideration may be specifically enforced upon acceptance and tender of the price within the time fixed by the optionor within the period granted for the exercise of the option.

2. Specific Performance—Withdrawal of Proposal.—A mere proposal, without consideration, creates no obligation unless accepted according to its terms and may be withdrawn at any time before acceptance, but if allowed to remain open until accepted it will become a binding contract.

SAMUEL W. ADAMS for appellant.

O. M. ROGERS and B. F. MENEFEE for appellees.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

Missouri Walton died in August, 1915. At the time of her death she owned a tract of 380 acres of land in Boone county. Under the provisions of her will the appellant, as executor, was authorized and empowered to sell and dispose of said property. He made endeavors to sell this property in 1916, without success. In February, 1917, one McMillen received information that the farm could be bought for $10,000 and on the 12th of February, in a conversation with appellee Northcutt, the latter stated he would give $10,000 for the property and requested McMillen to communicate with Foster, Vest & Co., real estate dealers at Covington, to see if the land could be purchased for the sum stated. February 13th, Foster, Vest & Co., represented to appellant that they had an offer of $10,000 for the land, which Riggs, the executor, agreed to accept, and they prepared a paper purporting to be an offer in this sum for said property, but the offer was not signed by any one. It was represented to appellant that the purchasers would be in the next day for the purpose of signing this offer.

In the space provided for the signatures of the offerers is this statement (signed by appellant):

"I *except* the above offer and will deliver a good deed and title if the purchaser takes the property and pays for said property within fifteen (15) *dates* of this date."

On the Sunday following the execution of this writing appellant noticed the land was advertised for sale in the Cincinnati Enquirer and realizing the property had not been sold, nor a purchaser secured for the land, he notified Foster, Vest & Co. that he desired to withdraw the paper theretofore given them. This they declined to permit him to do. Thereafter appellant disposed of the property for $10,000 to one Anderson, receiving a deposit of $200 on the contract price. He so notified the realtors on February 22nd, exhibiting to at least one

member of the firm the check received by him from the purchaser; and he again demanded the return of the paper left in their possession and they again declined to return it to him.

February 27th, appellee, in company with the real estate agents and others, went to inspect the property and as a result of this inspection they decided to purchase the property and endeavored that day to notify appellant of this decision. At the same time they deposited with the agents $100 to bind the bargain. Having been notified by appellant that he had disposed of the property to another, this suit was instituted by appellee's seeking a specific performance of the writing and for damages for its breach. The court denied the relief for specific performance, but upon transfer of the case to the common law docket a jury rendered a verdict in favor of appellees for $1,500, and it is to reverse said judgment that this appeal has been prosecuted.

Prior to February 27th, McMillen never communicated to Foster, Vest & Co. the name of the prospective purchasers, nor did appellant know that appellees were interested in the purchase of the property until after that date. Though dated February 13th, it is alleged in the petition the contract sued on was entered into February 27th, at which time, as we have seen, appellant had disposed of the property.

It is difficult to describe the exact identity or character of the writing sued on. It lacks many of the necessary and essential features of a contract. The evidence wholly fails to establish a contract, the specific performance of which could have been enforced against Riggs, for the very good reason that Riggs prior to February 27th, could not at any time have forced appellees to pay the purchase price. There must be mutuality in a contract to make it enforceable. At most the writing was nothing other than a mere offer, which is subject to withdrawal at any time before acceptance. It is doubtful if the paper arises to the dignity of an option, but by whatever name designated we are satisfied appellant had the right to withdraw the offer before it was accepted because it was given without any consideration, nor does it matter that a time was named within which the offer might be accepted.

An agreement by one to sell and convey land to another for a stated price, if given upon a proper considera-

tion, may be specifically enforced upon acceptance and tender of the price within the time fixed by the contract, and it is not a valid objection in such case that prior to acceptance and tender no obligation rested upon the optionee to purchase. Such an optional agreement to pay, made upon a sufficient consideration, can not be revoked by the optionor within the period granted for an exercise of the option. However, a mere proposal, without consideration, creates no obligation unless accepted according to its terms, and it may, therefore, be withdrawn at any time before acceptance, though, if such offer is allowed to remain open until accepted, it will become a binding contract. When an option supported by a consideration is accepted within the time allowed and according to its terms, the offer and acceptance constitute a contract of sale, and the same result follows from the acceptance of an offer without consideration if accepted before the offer is withdrawn. Warville on Vendors, Secs. 125 and 126; 39 Cyc. 1232; Elliott on Contracts, Vol. 8, Sec. 232; 13 C. J. 293; Frank, et al. v. Stratford-Handcock, 13 Wyo. 37, 77 Pac. 134, 110 Amer. St. Rep. 963, 67 L. R. A. 571; Brown v. Farmers' & Merchants' Nat. Bank, 76 Ore. 113, 147 Pac. 537.

The rule is thus stated in 6 R. C. L. pp. 603, 604:

"As no contract is complete without the mutual assent of the parties, an offer imposes no obligation until it is accepted according to its terms. So long as the offer has been neither accepted nor rejected, the negotiation remains open, and imposes no obligation upon either party. The one may decline to accept, or the other may withdraw his offer; and either rejection or withdrawal leaves the matter as if no offer had ever been made. The right to revoke an ordinary offer before acceptance is unquestioned." See also Becker v. Alvey, 27 Rep. 832, 86 S. W. 974; Rehm-Zeiher Co. v. Walker Co., 156 Ky. 6, 160 S. W. 777, 49 L. R. A. (N. S.) 694; Ross-Vaughan Tobacco Co. v. Johnson, 182 Ky. 325, 206 S. W. 407.

In Murphy, Thompson & Co. v. Reed, etc., 125 Ky. 585, 101 S. W. 964, 128 Am. St. Rep. 259; 10 L. R. A. (N. S.) 195, which seems to be one of the leading cases on the subject, it was held that a consideration of $1.00 in an option to sell real estate was so disproportionate to the value of the thing being sold as to represent no value, and on demurrer will be construed, as a matter of law, as having no consideration at all.

An option is described in said case as ''a standing offer to sell to the person and upon the terms named in the option, and an agreement to keep the proposition open for acceptance for the time stated.''

And it is also there held if the terms are fair, and have been understandingly entered into, it should be enforced if there is an acceptance and offer to comply with the payment of the consideration within the time specified.

An option to be binding upon the optionor, in the sense that it is irrevocable upon him during the period for which it was given, must be for a valuable consideration, that is, such a consideration as will support any other sort of contract.

In the Reed case, *supra,* it was held the options were not supported by sufficient consideration, and hence they could have been withdrawn at any time before acceptance without liability to the givers of the options, but as they were not so withdrawn they constituted, instead of binding options, voluntary offers to sell, which, like any other valid offers, were, when accepted, binding upon the person making them.

Though it is contended by appellees in their brief that a valid, binding contract was entered into on February 13th, it yet remains that not only does the petition allege the contract was executed February 27th, but it is admitted by the agents they would have closed a deal with any other person had they, before February 27th, received an offer of $10,000 for the property. They are very frank in stating that had the sale to McMillen's clients been consummated they would have been compelled to divide the commission with' him, whereas if they sold to one procured without his assistance they could retain the entire commission. There was no effort on the part of appellees to accept appellant's offer until February 27th, several days after appellant had sold the property to another, due notice of which was given the agents and a demand of them to return the paper sued on.

It follows, therefore, that appellant's motion for a directed verdict should have been sustained. The judgment is accordingly reversed for further proceedings consistent herewith.