*5RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION:  2000 FED App. 0154P (6th Cir.)
File Name:  00a0154p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

99-5099
SHARON FLOSS,
      *Plaintiff-Appellant,*

*v.*

RYAN'S FAMILY STEAK
HOUSES, INC., et al.,
      *Defendants-Appellees.*


99-5187
KYLE DANIELS,
      *Plaintiff-Appellee,*

*v.*

RYAN'S FAMILY STEAK
HOUSES, INC.,
      *Defendant-Appellant.*



Nos. 99-5099/5187

Appeal from the United States District Court
for the Eastern Districts of Kentucky at Covington
and Tennessee at Knoxville.
Nos. 98-00038; 98-00294—William O. Bertelsman
and R. Leon Jordan, District Judges.

Argued:  March 9, 2000

Decided and Filed:  May 1, 2000

Before:  MARTIN, Chief Judge; SUHRHEINRICH, Circuit
        Judge; GWIN, District Judge.[*]

————————————

**COUNSEL**

**ARGUED:**  Steven L. Schiller, Newport, Kentucky, for
Appellant in 99-5099; Stephen F. Fisher, JACKSON, LEWIS,
SCHNITZLER & KRUPMAN, Greeneville, South Carolina,
for Appellant in 99-5187.  Stephen F. Fisher, JACKSON,
LEWIS, SCHNITZLER & KRUPMAN, Greeneville, South
Carolina, for Appellees in 99-5099; April D. Carroll,
RIDENOUR, RIDENOUR & FOX, Clinton, Tennessee, for
Appellee in 99-5187.  **ON BRIEF:**  Steven L. Schiller,
Newport, Kentucky, for Appellant in 99-5099; Stephen F.
Fisher, JACKSON, LEWIS, SCHNITZLER & KRUPMAN,
Greeneville, South Carolina, Kelli L. Thompson, BAKER,
DONELSON, BEARMAN, ANDERSON & CALDWELL,
Knoxville, Tennessee, for Appellant in 99-5187.  Stephen F.
Fisher, JACKSON, LEWIS, SCHNITZLER & KRUPMAN,
Greeneville, South Carolina, for Appellees in 99-5099; April
D. Carroll, Bruce D. Fox, RIDENOUR, RIDENOUR & FOX,
Clinton, Tennessee, for Appellee in 99-5187.

————————————

**OPINION**

————————————

GWIN, District Judge.  With these appeals, consolidated
for purposes of decision, the Court reviews whether

—————————————————————————

[*] The Honorable James S. Gwin, United States District Judge for the
Northern District of Ohio, sitting by designation.

employees effectively waived their rights to bring actions in federal court under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). At the district court, the plaintiffs attempted to sue their former employer, Ryan's Family Steak Houses, Inc. ("Ryan's"). However, when applying for employment at Ryan's, both plaintiffs had signed a form indicating they would arbitrate all employment-related disputes. In both cases, Ryan's filed a motion to compel arbitration.

Finding no valid arbitration agreement, the United States District Court for the Eastern District of Tennessee refused to require Plaintiff-Appellee Kyle Daniels to arbitrate his claim under the ADA. In contrast, the United States District Court for the Eastern District of Kentucky found that Plaintiff-Appellant Sharon Floss was required to arbitrate her dispute and could thus not pursue her claim under the FLSA in federal court.

Ryan's now appeals the district court's refusal to require Daniels to arbitrate his ADA claim. Similarly, Floss appeals the district court's order requiring her to submit her FLSA claim to arbitration. Because we find neither Daniels nor Floss validly waived their right to bring an action in federal court, we **REVERSE** the district court's order requiring Floss to arbitrate her claim, and **AFFIRM** the district court's order refusing to require Daniels to submit his claim to arbitration.

I.

In support of its argument that the plaintiffs agreed to waive their right to bring an action in federal court and instead agreed to arbitrate all employment disputes, Ryan's relies upon a document identified as the "Job Applicant Agreement to Arbitration of Employment-Related Disputes." Ryan's includes this purported agreement in its employment application packet. Only those applicants who sign the

agreement are considered for employment at Ryan's.[1]  Both Daniels and Floss acknowledge signing the agreement.

The employee's agreement to arbitrate is not with Ryan's. Instead, the agreement runs between the employee and a third-party arbitration services provider, Employment Dispute Services, Inc. ("EDSI").  In the agreement, EDSI agrees to provide an arbitration forum in exchange for the employee's agreement to submit any dispute with his potential employer to arbitration with EDSI.  Although Ryan's is not explicitly identified as a party to the agreement, the agreement says the employee's potential employer is a third-party beneficiary of the employee's agreement to waive a judicial forum and arbitrate all employment-related disputes.

The agreement gives EDSI complete discretion over arbitration rules and procedures.  The agreement says that all arbitration proceedings will be conducted under "EDSI Rules and Procedures."   The agreement then gives EDSI the unlimited right to modify the rules without the employee's consent.

In July 1994, Kyle Daniels applied for employment with Ryan's and received this agreement as part of the employment application packet.[2]  Similarly, Ryan's gave Sharon Floss the agreement when she applied for employment in December 1997.  Both Daniels and Floss signed the agreement and began their employment at Ryan's shortly thereafter.

---

[1] A notice on the inside cover of the packet informs applicants that they must agree to the terms and conditions outlined in the agreement in order to be considered for employment with Ryan's.

[2] The agreement received by Daniels designated Employment Dispute Resolution, Inc. ("EDR") as the arbitration services provider.  EDR is now apparently referred to as Employment Dispute Services, Inc. ("EDSI").

disputes, including those involving federal statutory claims. Yet an employer cannot seek to do so in such a way that leaves employees with no consideration for their promise to submit their disputes to arbitration.  Here, we find that Floss and Daniels did not receive any consideration for their promise to arbitrate their disputes.  We thus refuse to enforce their promise in favor of Ryan's.

The judgment of the United States District Court for the Eastern District of Tennessee in case 99-5187 is **AFFIRMED**, and the judgment of the United States District Court for the Eastern District of Kentucky in case 99-5099 is **REVERSED**.

that EDSI's promise did not create a binding obligation. We agree.

EDSI's promise to provide an arbitral forum is fatally indefinite. Though obligated to provide some type of arbitral forum, EDSI has unfettered discretion in choosing the nature of that forum. Specifically, EDSI has reserved the right to alter the applicable rules and procedures without any obligation to notify, much less receive consent from, Floss and Daniels. EDSI's right to choose the nature of its performance renders its promise illusory. As Professor Williston has explained:

> Where a promisor retains an unlimited right to decide later the nature or extent of his performance, the promise is too indefinite for legal enforcement. The unlimited choice in effect destroys the promise and makes it merely illusory.

1 SAMUEL WILLISTON, CONTRACTS § 43, at 140 (3d ed. 1957).

EDSI's illusory promise does not create a binding obligation. The purported arbitration agreement therefore lacks a mutuality of obligation. Without a mutuality of obligation, the agreement lacks consideration and, accordingly, does not constitute an enforceable arbitration agreement.[8]

### V.

Ryan's has pursued an acceptable objective in an unacceptable manner. An employer may enter an agreement with employees requiring the arbitration of all employment

---

[8]Floss insists that the district court erred in determining as a matter of law that she was not fraudulently induced to sign the agreement. Because the agreement is unenforceable on other grounds, we do not address this argument.

Daniels ceased working at Ryan's on August 13, 1997. On that date, Daniels claims he attempted to resume his employment with Ryan's after taking a medical leave to treat his viral hepatitis. However, Daniels says Ryan's terminated him upon his return to the restaurant.

Floss ceased working at Ryan's on January 23, 1998. Floss left her position with Ryan's after a confrontation with two management employees. According to Floss, these management employees intimidated and harassed her after learning that she had complained to the United States Department of Labor regarding Ryan's pay practices.

On February 17, 1998, Floss sued Ryan's in the United States District Court for the Eastern District of Kentucky for violation of the Fair Labor Standards Act.[3] Floss claimed that Ryan's (1) did not pay employees legally-required minimum and overtime wages, (2) failed to pay employees for certain hours worked, and (3) retaliated against her because she complained of these practices to the United States Department of Labor. Floss sued in both her individual capacity and on behalf of similarly-situated Ryan's employees.

On May 19, 1998, Daniels filed his action against Ryan's in the United States District Court for the Eastern District of Tennessee. In this action, Daniels asserted a claim under the ADA, alleging that Ryan's terminated him on account of his handicapped status despite his ability to perform the essential functions of his job with or without reasonable accommodation.[4]

---

[3]Floss also asserted state-law claims for false imprisonment and intentional infliction of emotional distress, naming as codefendants the two management employees involved in the alleged confrontation.

[4]Daniels also asserted a claim under a state disability discrimination statute.

In both actions, Ryan's filed motions to compel arbitration. In ruling on these motions, the respective district courts reached different conclusions as to whether the agreements were enforceable.

In Daniels's action, the district court ruled that the agreement was not enforceable. The court reasoned that EDSI did not provide Daniels with any consideration for his promise to arbitrate his dispute with Ryan's. Though EDSI promised to provide an arbitration forum, the court found that only Ryan's and EDSI, rather than Daniels, actually benefitted from that promise. The court also found that the arbitration document did not bind EDSI. Specifically, the court noted that the agreement gave EDSI an unlimited right to unilaterally modify or amend the rules and procedures of the arbitration proceeding without providing notice to Daniels. Finally, the court noted that even if enforceable, the agreement was not sufficiently clear so as to represent a knowing and intelligent waiver of Daniels's right to pursue his disability discrimination claim in federal court.

However, the district court in Floss's case enforced the agreement.[5] The court rejected Floss's argument that claims under the FLSA could not be made subject to mandatory arbitration.

Both Ryan's and Floss now appeal the rulings adverse to them.

---

[5]The district court enforced the agreement under the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 2. The FAA authorizes federal district courts to stay a proceeding if any matter raised therein is subject to an arbitration agreement and to issue an order compelling arbitration if a party has filed suit in contravention of an arbitration agreement. *See* 9 U.S.C. §§ 3 and 4.

mutuality of obligation, a contract based on reciprocal promises lacks consideration. *See Dobbs v. Guenther*, 846 S.W.2d 270, 276 (Tenn. Ct. App. 1992); *David Roth's Sons, Inc. v. Wright and Taylor, Inc.*, 343 S.W.2d 389, 390 (Ky. Ct. App. 1961). Put more succinctly, such a contract "must be binding on both or else it is binding on neither." *Morgan v. Morgan*, 218 S.W.2d 410, 412 (Ky. Ct. App. 1949).

Promises may fail to create legally binding obligations for a variety of reasons. *See* 17A AM. JUR. 2D *Contracts* § 139 (1991). Most notably, a promise may in effect promise nothing at all. Such an illusory promise arises when a promisor retains the right to decide whether or not to perform the promised act. *See Trumbull v. Century Marketing Corp.*, 12 F. Supp.2d 683, 686 (N.D. Ohio 1998) (holding that employer's promise in employee handbook to arbitrate disputes did not create binding obligation when employer retains right to revoke arbitration provision); *David Roth's Sons, Inc.*, 343 S.W.2d at 391 (noting that a promise absent any fixed obligation to perform "is illusory in the sense that [the promisor] has made no legally enforceable commitment, and justice demands the other party should not be bound"). A promise is also illusory when its indefinite nature defies legal enforcement. *See Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997) ("Under Kentucky law, an enforceable contract must contain definite and certain terms setting forth promises of performance to be rendered by each party."); *Jamestowne On Signal, Inc. v. First Federal Savings & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990) ("'Courts will not uphold agreements which are indefinite and uncertain as to the obligations imposed on the parties thereto.'") (quoting *Union State Bank v. Woell*, 434 N.W.2d 712 (N.D. 1989).

In the purported agreement at issue in this case, EDSI offered its promise to provide an arbitral forum as consideration for Floss and Daniels's promise to submit any dispute they may have with their employer to arbitration with EDSI. In ruling in favor of Daniels, the district court found

to arbitrate the dispute in a contract which evidences a transaction in interstate commerce." *Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F.2d 1058, 1061 (5th Cir. 1990).

Floss and Daniels say the arbitration agreements they signed as part of their employment applications with Ryan's are unenforceable. In deciding whether the agreements are enforceable, we examine applicable state-law contract principles. *See Perry v. Thomas*, 482 U.S. 483, 492 n.9, 107 S.Ct. 2520, 2527 n.9, 96 L.Ed.2d 426 (1987); *Avedon Engineering, Inc.*, 126 F.3d at 1287; *Shulze and Burch Biscuit Co. v. Tree Top, Inc.*, 831 F.2d 709, 715 (7th Cir. 1987); *Coastal Indus., Inc. v. Automatic Steam Products Corp.*, 654 F.2d 375, 377-78 (5th Cir. 1981). Thus, we review both Kentucky and Tennessee law to decide if Floss and Daniels have executed valid arbitration agreements.

Consideration is an essential element of every contract. *See Price v. Mercury Supply Co.*, 682 S.W.2d 924, 933 (Tenn. Ct. App. 1984); *Cuppy v. General Accident Fire & Life Assurance Corp.*, 378 S.W.2d 629, 632 (Ky. Ct. App. 1964). In other words, a promise is legally enforceable only if the promisor receives in exchange for that promise some act or forbearance, or the promise thereof. *See Kozy v. Werle*, 902 S.W.2d 404, 411 (Tenn. Ct. App. 1995) ("Consideration consists when the promisee does something that he is under no legal obligation to do or refrains from doing [that] which he has a legal right to do."); *Sutton v. First Nat'l Bank of Crossville*, 620 S.W.2d 526, 531 (Tenn. Ct. App. 1981) ("'It is invariably held that the promise of one party is a valid consideration for the promise of the other party.'") (quoting *Dark Tobacco Growers' Co-op Assn. v. Mason*, 263 S.W. 60, 67 (Tenn. 1924)); *Phillips v. Phillips*, 171 S.W.2d 458, 464 (Ky. Ct. App. 1943) (defining consideration as a legal right given to the promisor the exercise of which he is otherwise not entitled).

A promise constitutes consideration for another promise only when it creates a binding obligation. Thus, absent a

## II.

Before turning to the merits of these appeals, we consider whether Floss timely filed her notice of appeal. Ryan's says Floss failed to file her appeal within thirty days of the issuance of the final order from which she appeals, as required by Federal Rule of Appellate Procedure 4(a)(1)(A).

On October 20, 1998, the district court issued an order staying Floss's FLSA action pending arbitration. On December 21, 1998, the court, at Floss's request, issued a final order dismissing her action. Floss filed her notice of appeal on January 21, 1999.

Ryan's says that the district court's order granting a stay constituted a final order with regard to the arbitrability of Floss's FLSA claim. The second order dismissing Floss's action was, according to Ryan's, superfluous. Because Floss did not file her notice of appeal within thirty days of the stay order, Ryan's argues that Floss's appeal is untimely.

We disagree. Floss could not have filed a notice of appeal based on the district court's stay order. An interlocutory order granting a stay pending arbitration is not appealable. *See* 9 U.S.C. § 16(b); *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1275 (6th Cir. 1990) (noting that interlocutory order directing parties to arbitrate dispute is not appealable). And contrary to Ryan's suggestion, the district court's stay order was interlocutory rather than final.[6] "[A] final order is one that dismisses an action in deference to arbitration." *Arnold*, 920 F.2d at 1275 (internal quotations omitted). The district court's stay order did no such thing.

---

[6] This Court has found that a stay order may constitute a final order when the stay delays the enforcement of a judgment pending the clarification of that judgment. *See M&C Corp. v. Erwin Behr GmbH & Co.*, 143 F.3d 1033, 1036-37 (6th Cir. 1998). Such is not the case here.

Floss filed her appeal within thirty days of the district court's final order dismissing her action; therefore, her appeal is timely.

### III.

We review *de novo* a district court's decisions regarding both the existence of a valid arbitration agreement and the arbitrability of a particular dispute. *See Bobbie Brooks, Inc. v. Int'l Ladies' Garment Workers Union*, 835 F.2d 1164, 1170 (6th Cir. 1987) (stating that district court's finding that a contract exists is subject to *de novo* review); *M&C Corp. v. Erwin Behr GmbH & Co.*, 143 F.3d 1033, 1037 (6th Cir. 1998) ("A determination of the arbitrability of a dispute is subject to *de novo* review.").

### IV.

In deciding whether to compel arbitration of a federal statutory claim, we initially consider whether the statutory claim is generally subject to compulsory arbitration. If the statutory claim is not exempt from mandatory arbitration, we next consider whether the parties have executed a valid arbitration agreement and, if so, whether the statutory claim falls within the scope of that agreement. *See Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985) (stating that courts should consider both whether the parties have agreed to arbitrate a federal statutory claim and whether that claim is generally subject to compulsory arbitration).

### A.

Mandatory arbitration of federal statutory claims continues to generate considerable debate among courts and commentators. At bottom, this debate centers on the efficacy of resolving "*public disputes in private fora.*" Harry Edwards, *Where Are We Heading With Mandatory Arbitration of Statutory Claims in Employment?*, 16 Ga. St. U. L. Rev. (forthcoming April 2000) (emphasis in original).

bias exists. In light of EDSI's role in determining the pool of potential arbitrators, any such bias would render the arbitral forum fundamentally unfair. *See Cole v. Burns Int'l Security Services*, 105 F.3d 1465, 1482 (D.C. Cir. 1997) ("At a minimum, statutory rights include both a substantive protection and access to a neutral forum in which to enforce those protections.").

Moreover, EDSI's current rules require an employee to generally pay one-half of the arbitrators' fees as a condition of pursuing a dispute. Such a fee structure could potentially prevent an employee from prosecuting a federal statutory claim against an employer. Recognizing as much, the District of Columbia Circuit has refused to countenance an employer's requirement that employees submit their disputes to arbitration as a condition of employment absent that employer's agreement to bear the full costs of the arbitrators' fees. *See Cole*, 105 F.3d at 1484-85.

Though we have concerns with both the fee structure and potential bias of EDSI's arbitral forum, we need not decide whether these deficits prevent the arbitration of Floss and Daniels's statutory claims. As explained below, Floss and Daniels are not contractually obligated to submit their federal statutory claims to arbitration in EDSI's arbitral forum. Thus, Floss and Daniels need not establish the unsuitability of EDSI's arbitral forum in order to litigate their statutory claims in federal court.

### B.

The Federal Arbitration Act declares that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. However, "the FAA was not enacted to force parties to arbitrate in the absence of an agreement." *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997). Indeed, "[t]he *sine qua non* of the FAA's applicability to a particular dispute is an agreement

continue to serve both its remedial and deterrent function.") (quoting *Mitsubishi*, 473 U.S. at 637).

Both Floss and Daniels argue that the specific arbitration forum provided by the current version of the EDSI Rules and Procedures does not allow them to effectively vindicate their claims under the FLSA and the ADA. They say the procedures allow for the appointment of a biased and incompetent panel of arbitrators,[7] as well as unduly limit the participants' discovery opportunities.

We have serious reservations as to whether the arbitral forum provided under the current version of the EDSI Rules and Procedures is suitable for the resolution of statutory claims. Specifically, the neutrality of the forum is far from clear in light of the uncertain relationship between Ryan's and EDSI. Floss and Daniels suggest that EDSI is biased in favor of Ryan's and other employers because it has a financial interest in maintaining its arbitration service contracts with employers. Though the record does not clearly reflect whether EDSI, in contrast to the American Arbitration Association, operates on a for-profit basis, the potential for

---

[7]Under EDSI's current procedures, a panel of three "adjudicators" preside over every arbitration proceeding. Each adjudicator is selected from one of three "selection pools." One pool consists of supervisors or managers of an employer who has entered into an arbitration agreement with EDSI. A second pool consists of nonsupervisory employees of an employer who is a signatory to an EDSI arbitration agreement. A third pool consists of attorneys, retired judges, and "other competent professional persons" not associated with either party. If the dispute involves more than $20,000, only licensed attorneys are included in this third pool.

The selection process begins with EDSI furnishing both parties a list of potential adjudicators organized according to each selection pool. Information regarding each adjudicator's recent employment history and related biographical information is provided to the parties along with this list. The parties may then move to strike any adjudicator for cause. Following the removal of any adjudicators for cause, the parties each strike a name from the list until only one name remains from each selection pool.

With its informal nature, arbitration is widely-accepted as a sound method for resolving essentially private disputes, such as those arising from collective bargaining agreements and other contracts. Yet, for some, this informality renders arbitration suspect as a forum for resolving statutory claims, which typically implicate important public interests. As one jurist and commentator has explained:

> When public laws are enforced in private fora, however, we have no assurance that the underlying *public interests* are fully satisfied. This is not to say that private fora are incapable of resolving disputes in a manner protective of the public interest. However, conflicts that are resolved through mediation and arbitration usually are not subject to public scrutiny, so we do not know whether such resolutions are consistent with prevailing interpretations of public law or whether the procedures followed were inequitable.

*Id.* (emphasis in original) (footnote omitted).

For a time, skepticism regarding the role of arbitration in resolving statutory claims held sway. This skepticism is perhaps best reflected in the Supreme Court's approach to the mandatory arbitration of statutory claims. The Court rejected arbitration as the lone forum for vindicating claims under Title VII of the 1964 Civil Rights Act and the Securities Act of 1933. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *Wilko v. Swan*, 346 U.S. 427, 438, 74 S.Ct. 182, 188-89, 98 L.Ed. 168 (1953). In so holding, the Court explained that arbitrators' inexperience with legal concepts coupled with the lack of stringent procedural safeguards rendered an arbitral forum, in the context of the statutory claims at issue, an unsuitable replacement for a court of law. *See Gardner-Denver*, 415 U.S at 57; *Wilko*, 346 U.S. at 435-36.

However, the tide soon turned. In a trio of cases decided in the 1980s, the Supreme Court enforced arbitration agreements

covering claims under the Sherman Act, *see Mitsubishi Motors Corp.*, 473 U.S. at 640, the Securities Act of 1933, *see Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 483, 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989), the Securities Exchange Act of 1934, *see Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 238, 107 S.Ct. 2332, 2344, 96 L.Ed.2d 185 (1987), and the civil provisions of the Racketeering Influenced Corrupt Organizations Act ("RICO"), *see McMahon*, 473 U.S. at 242. These holdings led the Court to declare in 1991 that "[i]t is now well settled that statutory claims may be the subject of an arbitration agreement, enforceable by the FAA." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991).

The Court addressed its growing acceptance of mandatory arbitration for statutory claims in *Gilmer v. Interstate/Johnson Lane Corp.*, in which the Court upheld the mandatory arbitration of claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq. See id.* at 27. In permitting the compulsory arbitration of statutory claims, the Court recognized that by "'agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" *Id.* at 26 (quoting *Mitsubishi*, 473 U.S. at 628). And the Court dismissed generalized attacks on the suitability of arbitral fora as arising from a "'suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants.'" *Id.* at 30 (quoting *Rodriguez de Quijas*, 490 U.S. at 481). Such a suspicion, the Court observed, was "far out of step" with the "current strong endorsement" of arbitration. *Id.*

Yet not all statutory claims are amenable to mandatory arbitration. *See Mitsubishi*, 473 U.S. at 627-28. In creating a statutory cause of action, Congress may choose to mandate a judicial forum for its resolution. *See id.* at 628. Such an intent is typically evidenced in the statutory text, legislative history, or by an "inherent conflict" between arbitration and

the underlying purposes of the statute. *McMahon*, 482 U.S. at 227.

Here, Floss argues that a conflict exists between arbitration and her claim under the FLSA. Specifically, Floss insists that an arbitral forum does not sufficiently allow for the furtherance of the important social policies implicated by the minimum wage provisions of the FLSA. Floss contends that a claim under these provisions involves not only an attempt to receive an individual remedy, but also an effort to promote a minimum standard of living for the nation's lowest paid workers. According to Floss, requiring a party to seek resolution of a minimum wage claim under the FLSA in an arbitral forum will thwart the latter objective.

Floss's argument does not persuade. Though a claim under the FLSA certainly serves a purpose beyond providing relief to an individual claimant, we fail to see how the broader policies furthered by such a claim are hindered when that claim is resolved through arbitration. As the Supreme Court has held, both judicial and arbitral fora "can further broader social purposes." *Gilmer*, 500 U.S. at 28. Indeed, the Court has upheld the compulsory arbitration of various statutory claims that further both individual and societal interests, including claims under the Sherman Act and RICO. Floss offers no compelling reason for drawing a distinction between these statutes and the FLSA.

However, even if arbitration is generally a suitable forum for resolving a particular statutory claim, the specific arbitral forum provided under an arbitration agreement must nevertheless allow for the effective vindication of that claim. Otherwise, arbitration of the claim conflicts with the statute's purpose of both providing individual relief and generally deterring unlawful conduct through the enforcement of its provisions. *See Gilmer*, 500 U.S. at 28 ("[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will