NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0325n.06
Filed: April 28, 2005

Case No. 03-6264

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|   |   |   |
|---|---|---|
| BEERS CONSTRUCTION COMPANY, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| PIKEVILLE UNITED METHODIST | ) | DISTRICT OF KENTUCKY |
| HOSPITAL OF KENTUCKY, INC., now | ) | |
| known as Methodist Hospital of Kentucky, | ) | |
| Inc., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

_____

**BEFORE: NELSON and BATCHELDER, Circuit Judges; COLLIER\*, District Judge.**

**ALICE M. BATCHELDER, Circuit Judge.** Pikeville United Methodist Hospital of

Kentucky, Inc. ("PMH") appeals an order of the district court denying its motion to dismiss the

complaint of Beers Construction Co. ("Beers") on the grounds that the parties' construction contract

included a binding arbitration agreement affording the district court only limited review of the

arbitrator's decision under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, and Kentucky state

law. For the following reasons, we dismiss this appeal for lack of jurisdiction.

**I.**

---

\*The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

Beers entered into a contract with PMH to construct an addition to a hospital located in Pikeville, Kentucky. After various delays in construction and increases in costs, Beers initiated this diversity action against PMH in the district court alleging breach of contract, breach of warranty and quantum meruit, and seeking $9,000,000 in damages.

The contract documents included the "EJCDC Standard Form of Agreement Between Owner and Contractor in the Basis of a Stipulated Price," and the "Supplemental Agreement Between Owner and Contractor," which included a section entitled "General Conditions of the Contract for Construction" (the "Contract") containing the Contract's dispute resolution provisions. As originally drafted, the dispute resolution provisions, in relevant part, state:

4.4 RESOLUTION OF CLAIMS AND DISPUTES

4.4.1 The Architect will review Claims and take one or more of the following preliminary actions within ten days of receipt of a Claim: (1) request additional supporting data from the claimant, (2) submit a schedule to the parties indicating when the Architect expects to take action, (3) reject the Claim in whole or in part, stating reasons for rejection, (4) recommend approval of the Claim by the other party or (5) suggest a compromise . . . .

4.4.2 If a Claim has been resolved, the Architect will prepare or obtain appropriate documentation.

4.4.3 If a Claim has been resolved, the party making the Claim shall, within ten days after the Architect's preliminary response, take one or more of the following actions: (1) submit additional supporting data requested by the Architect, (2) modify the initial Claim, or (3) notify the Architect that the initial Claim stands.

4.4.4 If a Claim has not been resolved after consideration of the foregoing and of further evidence presented by the parties or requested by the Architect. The Architect will notify the parties in writing that the Architect's decision will be made within seven days, *which decision shall be final and binding on the parties but subject to legal proceedings* . . . . (emphasis added)

4.5 ARBITRATION

2

4.5.1 CONTROVERSIES AND CLAIMS SUBJECT TO LEGAL PROCEEDINGS. *Any controversy of Claim arising out of or related to the Contract, or the breach thereof, shall be settled by legal proceedings*, except controversies or Claims related to aesthetic effect and except those waived as provided for in Subparagraph 4.3.5.[1] (emphasis added)

On February 7, 2001, PMH filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or alternatively, to stay proceedings on grounds that the Contract contained a binding arbitration clause governing Beers's claims. On April 3, 2001, the district court denied PMH's motion to dismiss, but entered a stay pending completion of arbitration proceedings pursuant to the FAA, 9 U.S.C. § 3. On reconsideration, however, the court reversed itself on October 2, 2001, finding that the Contract did not require the parties to submit their contractual disputes to arbitration. Nevertheless, since the district court found that Beers's claims for additional costs fell under Subsection 4.3.6, which provides that each "Claim shall be filed in accordance with the procedure established herein," it determined that as a condition precedent to legal proceedings, the parties were required to engage in the dispute resolution process through the Architect as provided in Section 4.4. The district court then vacated its prior order, again denied PMH's motion to dismiss, and entered a stay in the proceedings pending the Architect's decision. Neither party appealed the district court's October 2, 2001, order.[2]

On September 16, 2002, the Architect rendered his decision, and Beers filed a motion to lift the stay. Finding that the condition precedent to legal proceedings as described in its order of

---

[1]Beers argues that the parties actually intended "Subparagraph 4.3.5" to read "Subparagraph 4.3.4," which deals with waived claims. Considering that the Contract is poorly drafted, wrought with typographical errors, and that Subsection 4.3.4 does pertain to "Waiver of Claims," Beers is likely correct. Regardless, neither Subparagraph 4.3.4 nor 4.3.5 is relevant to this appeal.

[2]On November 19, 2001, this case was reassigned from District Judge Joseph M. Hood to District Judge Karen K. Caldwell.

October 2, 2001, had been fulfilled, the district court granted Beers's motion to lift the stay. The court noted that PMH had previously argued that the court's review of the Architect's decision is limited to a determination whether there had been fraud or similar misconduct in connection with that decision, and that if PMH wished to pursue that argument further, it should file a motion to dismiss under Rule 12(b)(6), including a supporting memorandum of law. PMH complied by filing a second motion to dismiss on November 15, 2002, in which it argued that the district court's authority to review the Architect's decision was limited solely to a determination of whether that decision was tainted by fraud under Kentucky law; PMH did not argue that the FAA applied. On September 10, 2003, the court denied PMH's second motion to dismiss, finding that there is "nothing in the Contract which suggests that the 'legal proceedings' contemplated throughout the Contract are to be circumscribed in any way by the Architect's decision," and that the "referral of Beers [sic] claim to the Architect was merely a condition precedent to filing suit in this Court in order to foster the possibility of a settlement through mediation."

On September 22, 2003, PMH filed its notice of appeal from the district court's order of September 10, 2003. PMH cites 28 U.S.C. § 1291 and the jurisdictional provision of the FAA, 9 U.S.C. § 16, as the bases for appellate jurisdiction. PMH argues on appeal that the district court erred in denying its motion to dismiss Beers's complaint, alleging that the court erred in failing to apply the limited review standard of the FAA, 9 U.S.C. § 10, to the dispute resolution procedure in the Contract, and that the district court erred in failing to give effect to every provision in the Contract when it declined to limit the meaning of the phrase "legal proceeding" to questions of fraud, misconduct or corruption as allegedly required by Kentucky law.

**II.**

4

As a threshold matter, we must determine whether we have jurisdiction to address the issues raised in this appeal. Beers argues that this court does not possess appellate jurisdiction to hear PMH's claims under either 28 U.S.C. § 1291 or the jurisdictional provision of the FAA, 9 U.S.C. § 16. We will address each of these contentions in turn.

One of PMH's bases for appellate jurisdiction is asserted to be 28 U.S.C. § 1291, which provides that "[t]he courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States." For purposes of § 1291, a final judgment is generally regarded as "a decision by the district court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521-22 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). Yet, "it is hornbook law that denial of a motion to dismiss is nonfinal and noncollateral," and thus not appealable. *Webster v. Sowders*, 846 F.2d 1032, 1039 (6th Cir. 1988); *see also United States v. Any and All Radio Station Transmission Equipment*, 204 F.3d 658, 668 (6th Cir. 2000) (finding that an order denying a motion to dismiss is not a final decision appealable under 28 U.S.C. § 1291 in the absence of special factors, nor is it an immediately appealable interlocutory order under 28 U.S.C. § 1292(a)(1)). PMH essentially concedes that the district court's order was not "final" for purposes of § 1291 alone.

Instead, PMH asserts that § 1291 permits an appeal when an order denying a motion to dismiss falls within the "narrow exception to the final judgment rule [that] has come to be known as the collateral order doctrine." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989). The Supreme Court has held that in order to fall within the collateral order exception, the order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment.

5

*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). In this case, we need not decide whether the district court's order satisfies the first two requirements of the collateral order exception because it fails to satisfy the third requirement of being effectively unreviewable.

The requirement that the issue underlying the order be effectively unreviewable later on "means that failure to review immediately may well cause significant harm," *Johnson v. Jones*, 515 U.S. 304, 311 (1995), or that "the order at issue involves 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'" *Midland*, 489 U.S. at 799 (quoting *United States v. MacDonald*, 435 U.S. 850, 860 (1978)). PMH contends that by refusing to enforce the alleged "final and binding" nature of the Architect's decision, the district court "would force [PMH] to engage in litigation not contemplated by the contract, making any later appeal effectively meaningless." Specifically, PMH argues that it "will most certainly suffer significant harm if the September 2003 order is not reviewed at this time and [PMH] is forced to fully litigate issues" which in its view have already been decided by the Architect. But PMH is merely arguing that failing to hear this appeal now will cause them "significant harm" in the form of inconvenience, lost time, and additional expense. The Supreme Court has expressly declined to find that the trouble and costs associated with unnecessary litigation satisfy the third requirement of the collateral order test. *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 498-99 (1989); *see also Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436 (1985) ("[T]he possibility that a ruling may be erroneous and may impose additional litigation expense is not sufficient to set aside the finality requirement imposed by Congress" in § 1291). Neither the requirements of 28 U.S.C. § 1291 nor the collateral order doctrine is met by this order denying dismissal of Beers's complaint.

PMH also asserts appellate jurisdiction under § 16(a)(1)(E) of the FAA, which provides that an appeal may be taken from any order "modifying, correcting, or vacating" an arbitration award. 9 U.S.C. § 16(a)(1)(E). This provision represents a limited grant of appellate jurisdiction in the case in which the parties' contractual dispute resolution provisions represent an agreement to arbitrate that is governed by the FAA, under which a written agreement to arbitrate disputes arising out of a transaction in interstate commerce "shall be valid, irrevocable, and enforceable, save upon grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA was not, however, enacted to force parties to arbitrate in the absence of an agreement to do so. *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 314 (6th Cir. 2000) ("[t]he *sine qua non* of the FAA's applicability to a particular dispute is an agreement to arbitrate"). Here it is clear that the Contract, involving the construction of a hospital in Kentucky and for a Kentucky non-profit corporation by a Georgia corporation, evidences a transaction in interstate commerce. In order to determine whether we have appellate jurisdiction under 9 U.S.C. § 16(a)(1)(E), therefore, it becomes necessary to determine whether the Contract includes an agreement to arbitrate. We review *de novo* a district court's decision regarding the existence of an arbitration agreement. *Floss*, 211 F.3d at 311.

Section 4.5 of the Contract, entitled "Arbitration," provides that "[a]ny controversy of [sic] Claim arising out of or related to the Contract, or the breach thereof, shall be settled by legal proceedings . . . ." The phrase "legal proceedings" is not limited or qualified in any way. The unambiguous intent of the "Arbitration" provision then is that contractual disputes will be resolved

7

through litigation, with the exception of certain disputes not relevant here.[3] PMH argues nonetheless that by agreeing to the procedures in Section 4.4, the parties in effect agreed to arbitrate their claims. The district court properly rejected this argument in its order of October 2, 2001. Subparagraph 4.4.4 provides that the Architect's decision "shall be final and binding on the parties but subject to legal proceedings." Under ordinary rules of contract interpretation, it is clear that the phrase "but subject to legal proceedings" qualifies the phrase "shall be final and binding," but is not itself qualified or limited, and operates to render the Architect's decision merely advisory. If the phrase "legal proceeding" is afforded its ordinary meaning, then the Contract contemplates the ultimate settlement of claims through court litigation and not arbitration. Although the district court found resort to the Architect prior to litigation to be mandatory under the Contract in order to facilitate settlement, necessitating a second stay, it clearly found no agreement to arbitrate. We agree. Because there is no agreement to arbitrate this dispute we have no jurisdiction to reach the merits of this appeal based on 9 U.S.C. § 16(a)(1)(E).

We are aware that several courts have decided that mandatory, but non-binding contractual dispute resolution provisions can in some instances constitute "arbitration" for purposes of the FAA., *see Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 747 (8th Cir. 2003), *United States v. Bankers Ins. Co.*, 245 F.3d 315, 322 (4th Cir. 2001), *Wosley, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1209 (9th Cir. 1998), *AMF, Inc. v. Brunswick Corp.*, 621 F. Supp. 456, 460-61 (E.D.N.Y. 1985), while other courts have suggested or concluded to the contrary. *See Fit Tech, Inc. v. Bally*

---

[3]We find it significant that the term "arbitration" appears nowhere in the Contract except in the title to Section 4.5, which clearly contemplates only the institution of "legal proceedings" to resolve disputes under the Contract. It also appears that the parties based the Contract on an industry standard document, which previously read, in pertinent part, that the Architect's decision is "final and binding on the parties but subject to mediation and arbitration." American Institute of Architects Document A201-1997, General Conditions of the Contract for Construction, ¶¶ 4.4.1, 4.4.5. The parties here replaced every reference to "mediation and arbitration" with the phrase "legal proceedings."

8

*Total Fitness Holding Corp.*, 374 F.3d 1, 7 (1st Cir. 2004); *Dluhos v. Strasberg*, 321 F.3d 365, 369-72 (3rd Cir. 2003); *Harrison v. Nissan Motor Corp. in U.S.A.*, 111 F.3d 343, 349-52 (3rd Cir. 1997). But we need not address this issue in this case. The primary purpose of the FAA is to ensure "that private arbitration agreements are enforced according to their terms." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478 (1989). We are satisfied that the terms of the Contract do not evidence an agreement to arbitrate.

**III.**

For the foregoing reasons, we DISMISS this appeal for lack of jurisdiction.