NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0827n.06

No. 12-6304; 12-6305

FILED
Sep 12, 2013
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

YVONNE DAY, LEONARD HASLAG,
JAMES McCORMICK, and JOHN TURNER,

    Plaintiffs-Appellees, (12-6304)

        and

REBECCA WALLACE, BARBARA WRIGHT,
and MADALYN SUOZZO,

    Plaintiffs-Appellees, (12-6305)

v.

FORTUNE HI-TECH MARKETING, INC.,
et al.,

    Defendants-Appellants.

_____ /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY

BEFORE:    CLAY, SUTTON, and GRIFFIN, Circuit Judges.

    CLAY, Circuit Judge.  These two closely related cases involve Defendant Fortune Hi-Tech

Marketing, Inc. ("Fortune Hi-Tech" or "FHTM").  Defendant hired Plaintiffs as independent

representatives and Plaintiffs sued, alleging that FHTM was in fact running an illegal pyramid

scheme.  Defendant moved the district court to compel Plaintiffs to proceed to arbitration pursuant

to the terms of the contract they had signed with Defendant.  While the district court initially granted

that motion, upon reconsideration the court reversed itself and vacated its earlier decision and

ordered the cases to proceed to trial. Defendant now appeals the two orders denying its motion to compel arbitration. We **AFFIRM** the judgment of the district court.

## BACKGROUND

### A.      Factual Background[1]

Defendant Fortune Hi-Tech Marketing, Inc. is a "multi-level marketing company that independently markets the services of various organizations."[2] In essence, Fortune Hi-Tech acted as a third-party marketing firm that sold services from companies to consumers. Fortune Hi-Tech hired each of the Plaintiffs as an Independent Representative ("IR"). An IR would pay an enrollment fee to Fortune Hi-Tech, and would sell the services of different companies on behalf of Fortune Hi-Tech and receive commissions for each sale he or she made. IRs also received bonuses if they recruited others to become IRs. If an IR signed up someone else who paid the enrollment fee, then the IR could get a bonus of $100. Plaintiffs allege that it was far more lucrative to recruit new IRs than to sell services.

When an IR joined Fortune Hi-Tech, they filled in an application and agreement which included a clause which stated that the IR had read the "FHTM Polices and Procedures" and that the terms of those polices were incorporated into the agreement between the company and the IR. (R. 11, Motion to Compel, Attachment 3, Application and Agreement, Nov. 8, 2010, at ¶ 4.) Section

---

[1]There are two cases before this Court, *Day v. Fortune Hi-Tech*, No. 12-6304, ("*Day*") and *Wallace v. Fortune Hi-Tech*, No. 12-6305, ("*Wallace*"), and while they have some minor differences in facts and procedural history, the substantive issue in each case is identical.

[2]Plaintiffs also sued several individual Defendants, but those claims are not relevant to the instant appeal.

8.4 of the policies and procedures stated that any claim brought under the agreement would be brought in arbitration handled by the American Arbitration Agreement, and included language that stated that the agreement to arbitrate would survive any termination of the agreement. Another clause in the same document stated that Fortune Hi-Tech could modify the agreement at any time. That clause made change effective upon notice, and defined notice as occurring when it was issued. Finally, section 12 of the FHTM Polices and Procedures stated that the agreement consisted of all of the documents, which FHTM retained the ability to modify at any time.

Plaintiffs allege that FHTM is a pyramid scheme and that they were each duped into joining the company on the promise that they could supplement their income or otherwise make a great deal of money, but that the promises were false and that the only way to make money on their initial outlay of $299 was to recruit more members. The merits of these claims has not yet been examined; the only issue before this Court is whether the contracts require the parties to submit their dispute to arbitration rather than to the courts for resolution. Plaintiffs all terminated their agreements with FHTM prior to the start of this litigation. During the time period in which Plaintiffs allege harm, there were no modifications to the contract.

**B.** **Procedural History**

Plaintiffs in the *Day* case, No. 12-6304, filed their complaint on September 2, 2010, in the United States District Court for the Eastern District of Kentucky. They alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 68, the Kentucky Consumer Protection Act, and Kentucky common law. Defendants filed a motion to compel arbitration on November 8, 2010. On December 22, 2010, Plaintiffs in the *Wallace* case, No. 12-

6305, filed a complaint in the United States District Court for the Southern District of California. Plaintiffs alleged violations under RICO, and California's Business and Professions Code, § 17500, *et seq*. Plaintiffs also sought class certification.

In January of 2011, Defendant filed a motion with respect to the *Wallace* Plaintiffs, asking the court to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), or to transfer the action pursuant to 28 U.S.C. § 1404(a). In April 2011, the case was transferred to the Eastern District of Kentucky. In November 2011, Defendant filed a motion to compel arbitration, or to stay the case pending the resolution of the *Day* case. Also in November 2011, Defendant filed a motion in the *Day* case itself, asking the court to compel arbitration.

The motion to compel arbitration in the *Day* case was granted in February 2012. The district court found that Plaintiffs had agreed to arbitrate their claims, and therefore it lacked jurisdiction to hear Plaintiffs' challenge to the validity of the arbitration clause. Plaintiffs moved the court to reconsider its decision. Upon reconsideration, the district court rescinded its order and opinion, and issued a new one on September 13, 2012, which denied Defendant's motion and ordered the case to proceed. The district court's reconsidered opinion was based on the Supreme Court's decision in *Granite Rock Co. v. Int'l Broth. of Teamsters*, 130 S. Ct. 2847 (2010), which clarified the nature of a court's jurisdiction in addressing agreements to arbitrate. On September 24, 2012, the district court issued an order in the *Wallace* case, which denied Defendant's motion on the same grounds and ordered the case to proceed to trial. These two appeals followed the denials of the motions to compel arbitration.

This Court has jurisdiction to review a district court's denial of a motion to compel arbitration as an interlocutory appeal under 9 U.S.C. § 16(a)(1). *Albert M. Higley Company v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006). Because federal jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332, the applicable substantive law is the state law of Kentucky.[3] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938).

## DISCUSSION

### A. Standard of Review

A district court decision over either the existence or validity of an arbitration clause or its application to a particular dispute is reviewed *de novo*. *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311 (6th Cir. 2000). "We review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003) (en banc) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943  44 (1995)).

### B. Analysis

Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, arbitration agreements are "valid, irrevocable, and enforceable, save upon grounds that exist at law or in equity for the revocation of any contract." *Id.* § 2; *accord Floss*, 211 F. 3d at 314. Plaintiffs claim that the arbitration clause of their contract with Defendant is void for lack of consideration. Because the clause could be modified at any time, within the sole discretion of Defendant, Plaintiffs claim that the provision lacked

---

[3]Plaintiffs have alleged violations of RICO, which would provide an alternative basis for federal jurisdiction. Regardless, because the question before the Court concerns contractual validity, which is a question of state law, the applicable law is that of Kentucky.

consideration and is therefore void. The district court agreed with Plaintiffs, and declined to compel arbitration. This appeal followed, and we now affirm the district court's decision.

There is a general presumption in favor of arbitration. *See, e.g.*, *Gateway Coal Co. v. United Mine Workers of Am.*, 414 U.S. 368, 377 (1974). Where parties have agreed to arbitrate some disputes, courts should generally construe their agreement to arbitrate broadly, and should generally resolve disputes over the scope of the arbitration clause in favor of arbitration. *Granite Rock Co. v. Int'l Broth. of Teamsters*, 130 S. Ct. 2847, 2857 (2010). However, if the dispute is itself over the validity of the arbitration clause, then it is a matter of ordinary judicial resolution, and no such presumption applies. *Id.* at 2857 58 (2010). Even if courts are meant to favor a finding that parties have agreed to submit their claims to arbitration, parties must still have a valid and enforceable agreement to resolve their claims in arbitration. *Id.* at 2856. Although it is a basic principle of contract law that every contract requires mutuality and consideration, *Cuppy v. Gen. Accidental Fire & Life Assurance Corp.*, 378 S.W.2d 629, 632 (Ky. 1964), an arbitration clause does not require independent consideration; so long as the contract as a whole is adequately supported by consideration, each clause is valid unless there is some other deficiency in the contract's validity. *Glazer v. Lehman Brothers, Inc.*, 394 F.3d 444, 452 54 (6th Cir. 2005); *accord Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009).

The district court found that the arbitration clause was unenforceable because the contract between Plaintiffs and Defendant was not supported by adequate consideration, and we agree. Because Defendant retained the ability to modify any term of the contract, at any time, its promises were illusory. *See Fowler's Bootery v. Shelby Boot Co.*, 117 S.W.2d 931, 932 33 (Ky. 1938).

6

Defendant was not bound by any particular provision of the contract because at any point, including immediately after acceptance, Defendant could have changed any clause without any recourse sounding in contract law available to Plaintiffs. The only notice provision made changes effective upon their issuance, rather than after a fixed period of time. Had the contract permitted unilateral alteration upon thirty days' notice, for example, there might have been consideration, because the altering party would still have been bound to the original terms for the thirty day period. *See* Restatement (Second) of Contracts § 77 cmt. b, illus. 5 (1981). But in this case, in effect, Defendant promised to do certain things unless it decided not to, and that is by definition illusory. Id. § 2 cmt. e; *see also id.* § 77. While some states may permit enforcement of a contract that requires only notice, rather than advance notice, for alteration of its terms, Kentucky is not one of those states. *See Fowler's Bootery*, 117 S.W.2d at 932 33; *Killebrew v. Murray*, 151 S.W. 662, 664 65 (Ky. 1912) (overruled on other grounds as recognized by *Johns Hopkins Hosp. v. Peabody Coal Co.*, 920 F. Supp. 738, 749 50 (W.D. Ky. 1996)). Accordingly, because the contract lacked consideration, the entire contract, including the arbitration clause, is void and unenforceable.

This Court's decision in *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000) is also instructive. In that case, this Court found that an arbitration clause was invalid because the promise to provide an arbitral forum, without any further detail, was "fatally indefinite." While the clause in the agreement provided details such as which arbitration organization would conduct the arbitration, and where the arbitration would take place, the fact that those could be unilaterally modified at any time rendered such promises illusory. The contract in the instant case is more detailed, but just as illusory as the one at issue in *Floss*, because as with the contract in *Floss*, it did

not ultimately require Defendant to submit to any particular forum or set of rules for arbitration inasmuch as Defendant could modify the arbitration clause to suit its purposes at any time.

Defendant raises three arguments as to why the agreement was supported by consideration, or why, even if there was no consideration, the contract is still enforceable. First, there was no modification of the arbitration clause at any point during the relevant time period here. Second, there was mutual performance under the existing terms of the contract, which means that for the period in which this performance took place, there was mutuality of obligation. Third, because the arbitration clause had a survival language clause, it was in fact bound to the clause once Plaintiffs terminated their contract. Each of these arguments fails.

As to Defendant's argument that the fact that it did not modify the contract indicates that there was mutuality of obligation during the relevant time period, that argument confuses performance of the terms with an obligation to perform under the contract. The fact that Defendant voluntarily continued to maintain the terms of their promise is irrelevant; the question is whether it had a legally binding obligation to continue to do so. Nothing bound Defendant to continue its agreement, or even to maintain the same terms. As the district court pointed out, Defendant could have, through any one of the various notice devices it included, changed the contract immediately upon receipt of a signed copy from any one of the Plaintiffs. Without a binding obligation, a promise is illusory, and therefore not enforceable as a contract. *Morgan v. Morgan*, 309 Ky. 581, 218 S.W.2d 410, 412 (1949) (a contract "must be binding on both or else it is binding on neither"); *Rehm-Zeiher v. F.G. Walker Co.*, 160 S.W. 777 (Ky. 1913). In the cases cited by Defendant modification only took effect at some point after notice was given. No such limit existed in this case; the changes would

be in place effective at the whim of Defendant, with no chance for Plaintiffs to leave the arrangement or seek better terms in exchange for the modification. *See, e.g.*, *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 667 68 (6th Cir. 2013) (relying on the fact that there was a time-lag between notice and the effect of the change to uphold an agreement).[4]

Next, Defendant argues that because the parties performed, mutuality of obligation existed under Kentucky law, and therefore a court can find a contract during that time period. But this argument fails for the same reason that Defendant's contention regarding modification fails. Nothing bound Defendant to perform. The fact that it continued to do so may be indicative of goodwill, or of its belief that it had an obligation, but the terms of the agreement itself were subject to modification at any point, and subsequent performance cannot excuse a want of consideration. *See Rehm-Zeiher Co.*, 160 S.W. at 780.

While Defendant cites cases that state if there is consideration, mutuality of obligation is not required, when the offered consideration was itself an agreement to be bound, then that argument becomes circular. It may be conceivable that there are residual claims arising under the contract that can be resolved by the terms of the contract, or that part of the contract was effectively ratified by the parties' performance, and thus should be enforced to that extent. But that question is not properly before the Court at this time. For now, the question is whether the claims should proceed to arbitration, and so to the extent that there was no binding contract including an arbitration clause, the question cannot be addressed by this Court. In other words, while there may be an equitable

---

[4]While that case was decided under Ohio law, it was based on the Restatement (Second) of Contracts, which is generally applicable in Kentucky. *See, e.g.*, *Sawyer v. Mills*, 295 S.W.3d 79, 89 (Ky. 2009).

reason why the district court could enforce discrete provisions of the contract based on the parties' course of conduct, that is not the same as finding that there was a contract in place during the relevant time period. *Cf. Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448 49 (2006) (holding that nothing necessarily prevents a court from finding an arbitration clause unenforceable in a contract that it later finds is enforceable). The survival language is similarly illusory. As the district court found, that provision itself could have been altered or removed at any time. If the clause itself is unenforceable, then a sub-clause must also be unenforceable; a subclause that was never valid and binding cannot survive the termination of the agreement, because it was never binding in the first place.

Finally, Defendant asks the court to sever the amendment provision, and enforce the remainder of the contract as written. We cannot find any authority (and Defendant has cited none) that would permit us to revise the contract to cure this deficiency. Furthermore, there is no evidence, anywhere in the agreement, that permits a court to infer that the parties intended this language to be severable, or regarding which terms should be severable..

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.